Morgan Ricketts (Bar No. 268892)
**RICKETTS & YANG**
540 El Dorado Street #202
Pasadena CA 91101
Telephone:    (213) 995-3935
Facsimile:    (213) 995-3963
Email:  morgan@rickettsandyang.com

Attorneys for Plaintiff Chris Miller

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS MILLER, | ) Case No.: 2:15-CV-8464 |
| Plaintiff, | ) |
| v. | ) **COMPLAINT FOR** |
| TOM BAKALY, (individual and official capacity), SHARON PAPA (individual and official capacity), GEORGE BRUNN (individual capacity), CITY OF HERMOSA BEACH, a California municipal corporation, HERMOSA BEACH CHAMBER OF COMMERCE, a California corporation, KEN HARTLEY, an individual, and DOES 1-100, inclusive, | ) **1. VIOLATION OF 42 U.S.C. § 1983 (FIRST AMENDMENT)**<br>) **2. VIOLATION OF ARTICLE 1, § 2 OF CALIFORNIA CONSTITUTION**<br>) **3. VIOLATION OF CALIFORNIA CIVIL CODE § 52.1(j)**<br>) **4. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>) **5. NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>) **6. UNFAIR BUSINESS PRACTICES**<br>) **7. NEGLIGENCE** |
| Defendants. | ) |
| | **DEMAND FOR JURY TRIAL** |

1

# I. JURISDICTION

1.     This Court has jurisdiction under 28 U.S.C. § 1331.  Federal question jurisdiction arises pursuant to 42 U.S.C. § 1983.

2.     This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a) because they arise under California state law, and are so related to the claims arising under federal law that they form part of the same case or controversy.

# II. VENUE

3.     Venue is proper pursuant to 28 U.S.C. § 1391 because the events giving rise to this Complaint happened in the Central District.

# III. PARTIES

4.     Plaintiff Chris Miller ("Plaintiff" or "Miller") is a resident of Los Angeles County, California.

5.     On information and belief, Defendant Tom Bakaly is a resident of the State of California and the City Manager of Defendant City of Hermosa Beach.  Defendant Bakaly is the administrative head of the government of the City.  He has the authority and duty to enforce all laws and ordinances; he has the authority to control, order, and give directions to all heads of City departments and to subordinate officers and City employees, including the City Clerk.  Defendant Bakaly is sued in his personal and official capacity.

6.      On information and belief, Defendant Sharon Papa is a resident of the State of California and the Chief of Police for the City of Hermosa Beach.  Defendant Papa is sued in her personal and official capacity.

7.      On information and belief, Defendant City of Hermosa Beach ("the City") is a municipal corporation organized and existing under the laws of the State of California, which is approximately one square mile in size and which has a population of approximately 19,000.

8.      On information and belief, Defendant Hermosa Beach Chamber of Commerce ("Chamber") is a corporation organized and existing under the laws of the State of California.

9.      On information and belief, Defendant Ken Hartley is a resident of the State of California, the President of Defendant Hermosa Beach Chamber of Commerce, and a former volunteer reserve police officer with the Hermosa Beach Police Department.

10.     At all times relevant to this action, Defendants Bakaly and Papa were employed by the City of Hermosa Beach as policy-making officials and are sued in their individual and official capacities.

11.     Plaintiff is informed and believes and thereon alleges that at all times mentioned below, each Defendant was the principal, agent, representative, partner, or co-conspirator of the remaining Defendants, and each other, and that in doing the acts alleged, each of the Defendants were acting within the course and scope of their agency, employment, partnership, conspiracy, or other authorized relationship with the other Defendants and with the permission and ratification of Defendants.  Whenever and

COMPLAINT

wherever reference is made in this Complaint to any acts of Defendants, such allegations and references shall also be deemed to mean the acts of each Defendant acting individually, jointly or severally.  The Defendants were engaged in a conspiracy to violate Plaintiff's constitutional and other rights, and were acting as co-conspirators with that aim in mind.  In committing the acts herein alleged, the individual Defendants Brunn, Papa, Bakaly, and Hartley, and Defendant Hermosa Beach Chamber of Commerce, acted knowingly, maliciously, and with reckless or callous disregard for Plaintiff's constitutional and other rights, which justifies an award of punitive damages under California law against each individual Defendant and the Defendant Hermosa Beach Chamber of Commerce.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

12.    Plaintiff timely filed claims with Defendant City of Hermosa Beach pursuant to California Government Code § 810 et seq.  The claims were denied by operation of law.  Plaintiff has exhausted all administrative remedies available to her.

## V. STATEMENT OF FACTS

**A.  Background: Measure O**

13.    In 2012, E&B Natural Resources, an oil company, purchased rights to drill for offshore oil in Hermosa Beach.  To allow E&B to drill, however, the city needed to lift a municipal ban on oil drilling.  The proposal to lift the ban was fiercely contested by Hermosa Beach residents and other concerned citizens, and ultimately the decision was put to a vote in the form of Measure O, which was on the March 3, 2015 ballot.

4

14.     Beginning in 2012, a number of concerned citizens mobilized to prevent oil drilling in Hermosa Beach, believing it would be harmful for property values, the environment, and the city as a whole.  The campaign was known as "Keep Hermosa Hermosa," a reference to keeping the city beautiful.  The activists spent hundreds of hours over the course of three years working to defeat the measure, including by attending city council meetings, reviewing thousands of pages of documents regarding the environmental studies about the proposed drilling, assisting the city of Hermosa Beach with a legal battle against E&B, hosting events and designing advertisements that would raise local awareness about the negative effects of oil drilling, fundraising, and more.

15.     Hermosa Beach has a police department comprised of under 50 police officers.  On information and belief, none of those police officers live in Hermosa Beach.  On information and belief, a majority of those police officers are members of a union, the Hermosa Beach Police Officers Association, which has taken the position that salaries and benefits for Hermosa Beach police officers are not competitive with those of other nearby beach cities.  Prior to the March 3 ballot, the union issued a statement and advertisements in support of Measure O, in an attempt to paint the measure as important for public safety because of the need for increased city funds.  On information and belief, the union publicly supported Measure O because it believed that if Measure O passed, the city would have a significant source of revenue from the oil drilling with which to raise salaries and benefits for police officers.

16.     The campaign against Measure O was successful in terms of high visibility and sustained momentum against Measure O, and ultimately, on March 3, 2015, Hermosa Beach voters overwhelmingly defeated Measure O (79% against to 21% in favor).  The activists against Measure O, who had been devoting thousands of unpaid hours since 2012 to defeating the measure, gathered on the night of March 3, 2015, to celebrate their victory at The Standing Room, a local restaurant on Hermosa Avenue in Hermosa Beach. Throughout the night, the activists watched the election results coming in on live television at the Standing Room, and good-naturedly chanted their rallying cry, "No on O!" together whenever a precinct reported another victory at the polls.  Those present included upstanding members of the Hermosa Beach community, including current and former city councilmembers, as well as the children of activists.  On information and belief, the celebration was entirely appropriate and civil, and there were no known instances of violence, physical conflict, or profanities that evening at the Standing Room.

17.     The Standing Room is a small to mid-size restaurant, with a patio that looks out onto Hermosa Avenue and booths and tables inside.  On Hermosa Avenue directly in front of the Standing Room, the opposing lanes of traffic are separated by a traffic island with planting space for landscaping.

**B. Background: Chris Miller**

18.     Plaintiff was born and raised in Hermosa Beach.  Her father, Warren Miller, owned substantial retail space on Pier Avenue, Hermosa's main street, where his business, Warren Miller Entertainment, was headquartered and produced over 500 films. Plaintiff attended schools in Hermosa Beach and although she no longer resides in the

6

city, she has remained actively involved with the Hermosa Beach community for over fifty years.  She has helped to produced six films on the history of Hermosa Beach; for eight years, she served on the Board of Directors of the Hermosa Beach Historical Society; she fundraised for, commissioned, and designed Hermosa's first mural; and she chaired the Centennial Dinner in 2007.  She has been formally recognized by the Hermosa Arts Foundation for her contributions to the community, and received an Honorary Citizen award from then-mayor Michael Keegan for her lifelong commitment to the city.

19.    Plaintiff is a professional photographer.  For nearly twenty years, Plaintiff was a salaried employee at The Beach Reporter, a community newspaper.  Starting in 2012 through March 3, 2015, she was an independent contractor for the Beach Reporter, and would receive calls on a weekly basis or nearly weekly basis to cover various events such as city council meetings, holiday celebrations, business grand openings, and other notable or newsworthy events in the Hermosa Beach community.  Plaintiff also does photography work for private clients on an as-needed basis.

20.    Prior to March 3, 2015, Plaintiff was casually acquainted with Defendant Bakaly, Defendant Papa, and Defendant Hartley through her involvement in the city of Hermosa Beach.  Plaintiff was also known to the Chamber of Commerce prior to March 3, 2015, as she was a member and was sworn in as a Director of the Board on January 1, 2015.

21.    Starting in 2012, Plaintiff was active in the movement to defeat Measure O.

**C. False Police Report and Subsequent Events**

22.     On the night of March 3, 2015, an activist parked his truck on Hermosa Avenue in front of the Standing Room, on the other side of the traffic island, on information and belief because he could not find parking and wanted to attend the celebration for the defeat of Measure O.  The truck was carrying an electronic billboard programmed to display anti-Measure O messages, including "No on O" and "Pack it up E&B."  At the location where the activist parked the truck, the messages were visible to many of the celebrating activists in the Standing Room, particularly those who were on the patio.  Plaintiff could see the messages from where she was standing on the patio.

23.     At some point during the evening of March 3, 2015, Plaintiff briefly left the Standing Room patio to take photographs of the celebrating activists, and then returned to the patio.  At no time was she approaching anyone outside of the Standing Room; she only left to get a better angle for her photographs.  No one else was with her when she did so, and she was only outside of the patio for a brief time before returning.  She returned of her own volition and without any prompting or physical contact by any other person.

24.     At some point that evening around 10:00 p.m., a Hermosa Beach city employee, Tony Papandrea, arrived to ticket the truck for parking in the street, and the owner of the truck went out to speak with Papandrea.  At that time, it was fairly dark out except for the lights of businesses and streetlights.

25.     While Papandrea was in the process of writing the ticket, Plaintiff and others were still celebrating.  After another chant of No on O, Plaintiff called out from the patio of the Standing Room something to the effect that there would be no pay raises, "too bad!"  As part of those comments, Plaintiff also stated "Pack up, you guys, you

8

lost!"  Plaintiff was referring generally to E&B and to supporters of Measure O, and not to the Hermosa Beach Police Department. No reasonable listener would have thought she was addressing the police specifically with her comments, although they could have reasonably concluded that she was making these statements to Papandrea, who was neither a police officer nor affiliated with the police department.

26.     Unbeknownst to Plaintiff at the time of her comments, a Hermosa Beach police officer, Defendant George Brunn, was nearby, several yards behind the activist's truck on the opposite side of the street, on the other side of the traffic island's landscaping, where Plaintiff did not see him.

27.     On information and belief, Defendant Brunn was upset that Measure O was defeated at the polls.  On information and belief, Defendant Brunn heard the No on O chants and, without knowing who Plaintiff was, decided to punish her for her comments critical of Measure O.  He noticed that Plaintiff was talking to Kathy Dunbabin, an individual he knew.  He waited until Dunbabin left the party, then approached her and asked her who she had been talking to.  Dunbabin spoke to him for some period of time letting him know various things about who Plaintiff was, including her name and the fact that her father was Warren Miller of Warren Miller Entertainment.

28.     On information and belief, prior to leaving his shift that evening, Defendant Brunn falsely reported to his watch commander that Plaintiff had yelled taunts about the Hermosa Beach Police Department at him, including the words, "Fuck the police," and encouraged others on the patio to do the same, resulting in a crowd chanting "Fuck the police" at Defendant Brunn from the Standing Room patio.  On information and belief,

9

Defendant Brunn also falsely reported to his watch commander that an unknown male had physically guided Plaintiff back to the Standing Room from the street at some point in an effort to calm the situation.  Defendant Brunn also falsely claimed he recognized Plaintiff from city events, instead of honestly reporting that he had had to find out who she was from Kathy Dunbabin.

29.    On information and belief, Defendant Brunn's watch commander relayed Defendant Brunn's report to the Chief of Police, Defendant Sharon Papa, without investigating Defendant Brunn's comments further.

30.    On information and belief, Defendant Papa knew that Defendant Brunn's police car was equipped with a dashboard camera, but did not view the footage or otherwise investigate Defendant Brunn's story before contacting Defendant Ken Hartley, the President of Defendant Hermosa Beach Chamber of Commerce, to complain about Plaintiff and the alleged incident on March 6, 2015.  On information and belief, Defendant Papa and Defendant Hartley then conspired to retaliate against Plaintiff for vocally opposing Measure O, and thus deny her the First Amendment right to criticize and express her opinion on matters of political importance.

31.    On March 6, 2015, after his conversation with Defendant Papa, but without conducting any investigation or attempting to confirm what he had heard from her, Defendant Hartley called Plaintiff and demanded she submit a written apology for her statements.

32.    On information and belief, Defendant Hartley supported Measure O, and is personally offended by opponents of Measure O, to the point of engaging in unreasonable

10

and dangerous behavior.  On information and belief, on one occasion, an opponent of

Measure O saw that a pro-Measure O yard sign was displayed prominently at Defendant

Hartley's home, and yelled, "Sellout!" from his car as he drove past the house.

Defendant Hartley got into his own car, sped to catch up with the Measure O opponent,

and screamed obscenities from his car at the opponent, and challenged him to fight.  On

information and belief, on another occasion, Defendant Hartley made a citizen's arrest of

another Hermosa Beach resident for "littering" and refused to accept an apology, when

all the resident had done was leave "No on O" flyers on Defendant Hartley's property.

On information and belief, Defendant Hartley's personal animosity towards the

opponents of Measure O motivated him to conspire with the other Defendants to punish

Plaintiff for opposing Measure O.

33.    Also on March 6, 2015, the Hermosa Beach Police Department directed

Defendant Brunn to prepare a written report of the events of March 3, 2015, on

information and belief, in order to create a paper trail that would assist in retaliating

against Plaintiff and to help justify to other Hermosa Beach citizens the retaliatory

behavior that the Chief and the Chamber planned to engage in.

34.    On or about March 8, 2015, Plaintiff called Defendant Papa and requested

to be allowed to review the report and any video of the incident so that she could more

clearly recall what she might have done to upset Defendant Brunn on the night of March

3, 2015.  Defendant Papa refused to release any such documents to Plaintiff.

35.    On March 11, 2015, Defendant Brunn and Tony Papandrea submitted

written reports about what had happened.  Defendant Brunn's report stated that Plaintiff

not only identified the Hermosa Beach Police Department by name, but that she "encouraged many patrons on the patio of the Standing Room to join in yelling 'Fuck the police.'"  Contrary to his initial report to the watch commander, Defendant Brunn's written report did not allege that Plaintiff had actually used the words "Fuck the police." By contrast, Papandrea's report omitted any mention of the police department, the words "Fuck the police," or any chant by the crowd.  Papandrea's report alleged that Chris Miller said "there go your fucking raises," whereas Defendant Brunn's stated she had merely said, "there go your raises."   Despite these significant contradictions between Defendant Brunn and Papandrea's reports, and the inconsistencies between Brunn's initial oral report and his later written report, no one at the Hermosa Beach Police Department attempted to view the dashboard camera footage or otherwise investigate the story further, on information and belief because their purpose was to punish Plaintiff.

36.    On March 11, 2015, Defendant Papa called Plaintiff to demand a written apology, claiming that Plaintiff no longer had freedom of expression because she now was a Director of the Board of the Chamber.

37.    On March 18, 2015, Defendant Hartley, in his capacity as President of the Chamber, issued a formal written reprimand to Plaintiff and placed her on twelve months' probation, based on her having stated to a Hermosa Beach police officer that he was not getting a raise, and causing others to join in her statements.  Defendant Hartley's letter also demanded that Plaintiff prepare a written apology to the police department and state that her personal opinions in no way represented the Chamber.

38.     On March 20, 2015, Plaintiff submitted a letter to the Hermosa Beach Police Department explaining that she had merely expressed her personal opinion on March 3, 2015, and was not speaking on behalf of the Chamber at the time.  However, Plaintiff did not apologize, as she had done nothing wrong, and had not made the statements she was accused of making.

39.     On information and belief, after Plaintiff submitted her letter, Defendant Hartley, Defendant Papa, and Defendant Bakaly discussed it and were dissatisfied because it contained no apology.  On information and belief, all Defendants then conspired to punish Plaintiff further.

40.     On March 23, 2015, Defendant Papa sent a letter to the Chamber to request that it address Plaintiff's conduct, and insinuated that the Chamber's businesses would face retaliation if the Chamber did not cooperate.  The letter was written on police department letterhead, and signed "Sharon Papa, Chief of Police."

41.     On March 26, 2015, Plaintiff submitted a written request to the Hermosa Beach City Clerk to see the relevant video and reports from the night of March 3, 2015, in an effort to clear her name.  The City Clerk refused, on information and belief at the direction of Defendant Bakaly, in a deliberate effort to frustrate Plaintiff's efforts to clear her name and rectify any misunderstandings about what she had actually said.

42.     On information and belief, the same documents that both Defendant Papa and Defendant Bakaly denied Plaintiff – the police reports and video – were provided to the Directors of the Chamber's Board, in an attempt to convince them to vote to remove Plaintiff from the Board.

COMPLAINT

43.     On April 2, 2015, the Chamber held a meeting and voted unanimously to remove Plaintiff from the Board if she did not apologize; if she did apologize, the Chamber voted to allow her to resign from the Board instead of being removed.  On information and belief, the members of the Chamber's Board voted in support of removing Plaintiff not because they genuinely believed there was a basis for removal, but because they were in fear of losing the support of the Hermosa Beach Police Department, or even becoming targets of police harassment and retaliation if they did not cooperate to deprive Plaintiff of her constitutional rights, as demanded by Defendants Hartley and Papa.

44.     Plaintiff did not apologize and was removed from the Board of the Chamber effective April 7, 2015.

45.     Since March 3, 2015, the Beach Reporter has not contacted Plaintiff once to give her work assignments; on information and belief, this is because of Defendants' actions against Plaintiff.  In addition, on at least six occasions since March 3, 2015, local newspapers have published stories which repeated the defamatory statements made by Defendants Bakaly and Papa and which assumed that Plaintiff made the statements falsely attributed to her.

46.     On information and belief, Defendant Tom Bakaly intentionally commissioned a biased investigator, or instructed the investigator to make favorable findings, in order to calm the political firestorm that erupted in Hermosa Beach as a result of Defendants' treatment of Plaintiff.  That investigator interviewed twenty nine witnesses, many of whom had been present at the Standing Room, and all of whom

14

denied that Plaintiff had used profanity at any time.  The investigator also located the

dashboard camera video, which shows that Plaintiff did not use profanity and that

Defendant Brunn lied about the yelling of "Fuck the police."  Nonetheless, the

investigator concluded that Plaintiff had in fact used profanity that evening, against the

great weight of the evidence.  On information and belief, the investigator was aware that

by finding that Plaintiff had used profanity, Plaintiff's credibility would be damaged and

Plaintiff would suffer additional harm to her reputation, and intentionally found that

Plaintiff had used profanity in order to cause those things to happen.  Moreover, the

investigator concluded that Plaintiff was "contradicted" by the evidence, because Plaintiff

had later asserted that her only comment related to there being no raises, and the

investigator concluded she had made additional statements, though trivial.  However, the

investigator did not make any conclusions about Defendant Brunn's credibility or lack

thereof, even though his version of events was flatly contradicted by Papandrea's

account, which unlike Brunn's, made no mention of the Hermosa Beach Police

Department, any crowd chanting, or the words "Fuck the police."

47.    On information and belief, on multiple occasions, Defendant Tom Bakaly

insisted to third parties, including newspaper reporters, that Plaintiff is guilty of using

profanity and that the Chamber was right to hold her accountable for her "inappropriate"

behavior by telling the police they would not get raises.  On information and belief, he

also targeted Plaintiff because of her statement that someone was not getting a raise, and

ordered further investigations into her conduct solely because of that statement, in an

attempt to punish and discredit her.  Finally, on information and belief, Defendant Bakaly

15

purposely declined to use his authority over City employees to intervene in the unlawful course of events that led to serious damages to Plaintiff, and was motivated by a desire to punish Plaintiff in doing so.

48.     On information and belief, once it became clear that Plaintiff had not shouted any obscenities to the police nor led anyone to yell "Fuck the police," Defendant Bakaly and Papa conspired to take steps to cover up that fact, including by refusing to release public records that proved her innocence, covering up the existence of the dash cam video, hiring a biased investigator to create a false paper trail justifying the city's actions with respect to Plaintiff, and by making deliberately false statements to media outlets in an attempt to paint Plaintiff as a troublemaker and destroy her reputation and credibility.

**D.  Monell Claim**

49.     The City of Hermosa Beach maintains a policy, practice, and/or custom of unlawfully retaliating against those who criticize the City or its departments, particularly the police.

50.     The violation of constitutional and/or statutory rights herein complained of resulted from a policy, practice, and/or custom of the City and was directed, approved and/or ratified by City Manager Defendant Tom Bakaly, and Chief of Police Defendant Sharon Papa.  Bakaly and Papa are policymakers for the City.  Each of these individuals were present for the execution of the policy, practice, and/or custom.  Moreover, on information and belief, Defendant Papa advised Defendant Bakaly in advance of the plan

16

to retaliate against Plaintiff by writing a letter to Defendant Chamber in an effort to have Plaintiff removed from the Board, and Defendant Bakaly approved that plan in advance.

**E. Damages Sustained As Result of Defendants' Conduct**

51.     Since the events of March 3, 2015, Plaintiff has not been offered any work for the Beach Reporter and her income has decreased as a result.

52.     Since March 3, 2015, the damage to Plaintiff's reputation has resulted in fewer private clients hiring her for photography jobs. Her income has decreased as a result.

53.     Since March 3, 2015, Plaintiff has suffered extreme stress, nightmares, tearfulness, panic attacks, and other emotional distress caused by Defendants' unlawful conduct.

54.     Plaintiff has lost her position on the Board of Directors of the Chamber of Commerce, which would have provided her with potential business opportunities and greater publicity for her work.

55.     Plaintiff has lost the ability to go to her hometown, which she loves, without re-experiencing the stress and trauma caused by Defendants.

56.     Plaintiff's reputation has been damaged irretrievably by the actions of all Defendants.  Numerous comments to the articles published by the Beach Reporter show that many citizens believe Plaintiff in fact did yell "Fuck the police" and deserves to be punished for it.  This loss of reputation has resulted in emotional distress and economic loss for Plaintiff.

17

# V. CLAIMS

## FIRST CLAIM FOR RELIEF

### (Violation of Civil Rights – 42 U.S.C. § 1983)

### (First Amendment – Against All Defendants)

57.     Plaintiff realleges and incorporates by reference herein each and every allegation set forth in paragraphs 1 through 56.

58.     By their conduct, Defendants retaliated against Plaintiff based on her exercise of rights protected by the First Amendment to the United States Constitution, which deprived her of those rights.

59.     At all relevant times, Defendants Bakaly, Papa, and Brunn acted under color of law.

60.     At all relevant times, Defendant Chamber and Defendant Hartley conspired with the Defendant City of Hermosa Beach, acting by and through Defendants Bakaly, Papa, and Brunn, to harm Plaintiff, by actively discussing with each other what steps they could take to force Plaintiff to apologize publicly for challenging the police and how to punish her if she did not comply with their demands.

61.     After the initial police report, which was both false and lacking in any legally significant facts, Defendants did not make any attempt to either verify the allegations or determine whether there was any legal justification for taking actions adverse to Plaintiff, yet took such actions against her including investigation of her conduct, harassing her for an apology she was not required to make, causing her to be removed from the Board of the Chamber, preventing her from being hired to work for the

18

Beach Reporter, and making false and disparaging defamatory statements about her to third parties.

62.     Defendants, acting in their individual capacities, unreasonably and unlawfully retaliated against Plaintiff for exercising her First Amendment right to associate and to speak her opinion on matters of political significance.

63.     Defendants' conduct deprived Plaintiff of her rights, also causing her damages in an amount to be proven at trial.

64.     Plaintiff is entitled to recover her costs and reasonable attorney's fees incurred in prosecuting this claim for relief.

65.     At all relevant times, each Defendant was the agent or employee of the remaining Defendants, and in doing the acts alleged, each of the Defendants were acting within the course and scope of their agency or employment, or other authorized relationship with the other Defendants and with the permission and ratification and active support and conspiracy of the other Defendants.

66.     Defendants' unlawful actions were done willfully, maliciously, and with the specific intent to deprive Plaintiff of her rights under the Constitution of the United States.  They were also done with malice, fraud, and oppression, entitling Plaintiff to punitive damages against all Defendants except Defendant City of Hermosa Beach, as provided by law.

**SECOND CLAIM FOR RELIEF**

**(Violation of Civil Rights – Article I, § 2 CALIFORNIA CONSTITUTION)**

**(Free Speech – Against All Defendants)**

19

67. Plaintiff realleges and incorporates by reference herein each and every allegation set forth in paragraphs 1 through 66.

68. By their conduct, Defendants retaliated against Plaintiff based on her exercise of rights protected by Article 1, § 2 of the California Constitution, which deprived her of those rights.

69. At all relevant times, Defendants Bakaly, Papa, and Brunn acted under color of law.

70. At all relevant times, Defendant Chamber and Defendant Hartley conspired with the Defendant City of Hermosa Beach, acting by and through Defendants Bakaly, Papa, and Brunn, to harm Plaintiff, by actively discussing with each other what steps they could take to force Plaintiff to apologize publicly for challenging the police and how to punish her if she did not comply with their demands.

71. After the initial police report, which was both false and lacking in any legally significant facts, Defendants did not make any attempt to either verify the allegations or determine whether there was any legal justification for taking actions adverse to Plaintiff, yet took such actions against her including investigation of her conduct, harassing her for an apology she was not required to make, causing her to be removed from the Board of the Chamber, preventing her from being hired to work for the Beach Reporter, and making false and disparaging defamatory statements about her to third parties.

72.     Defendants, acting in their individual capacities, unreasonably and unlawfully retaliated against Plaintiff for exercising her First Amendment right to associate and to speak her opinion on matters of political significance.

73.     Defendants' conduct deprived Plaintiff of her rights, also causing her damages in an amount to be proven at trial.

74.     Plaintiff is entitled to recover her costs and reasonable attorney's fees incurred in prosecuting this claim for relief.

75.     At all relevant times, each Defendant was the agent or employee of the remaining Defendants, and in doing the acts alleged, each of the Defendants were acting within the course and scope of their agency or employment, or other authorized relationship with the other Defendants and with the permission and ratification and active support and conspiracy of the other Defendants.

76.     Defendants' unlawful actions were done willfully, maliciously, and with the specific intent to deprive Plaintiff of her rights under the California constitution. They were also done with malice, fraud, and oppression, entitling Plaintiff to punitive damages against all Defendants except Defendant City of Hermosa Beach, as provided by law.

### THIRD CLAIM FOR RELIEF

### (Bane Act Violation – Cal. Civ. Code § 52.1(j))

### (Defendant Papa, personal and individual capacity)

77.     Plaintiff realleges and incorporates by reference herein each and every allegation set forth in paragraphs 1 through 76.

21

78.     Defendant Papa interfered with Plaintiff's exercise and enjoyment of rights guaranteed to Plaintiff under the United States Constitution and the California Constitution and other laws, through the use of threats, intimidation, or coercion directed against the Chamber of Commerce.  Defendant Papa did so by threatening problems between the Chamber members and her police department.  Because police officers carry weapons, that could reasonably have been interpreted as a threat of violence against the Chamber members or their property, including their businesses.

79.     Defendant Papa, as Hermosa Beach's Chief of Police, had the apparent ability to carry out her threat of creating problems for the members of the Chamber with the police officers employed by Hermosa Beach.

80.     Defendant Papa's conduct deprived Plaintiff of her rights, also causing her damages in an amount to be proven at trial.

81.     Plaintiff is entitled to recover her costs and reasonable attorney's fees incurred in prosecuting this claim for relief.

82.     At all relevant times, each Defendant was the agent or employee of the remaining Defendants, and in doing the acts alleged, each of the Defendants were acting within the course and scope of their agency or employment, or other authorized relationship with the other Defendants and with the permission and ratification and active support and conspiracy of the other Defendants.

83.     Defendants' unlawful actions were done willfully, maliciously, and with the specific intent to deprive Plaintiff of her statutory rights under Civil Code § 52.1. They were also done with malice, fraud, and oppression, entitling Plaintiff to punitive

22

damages against all Defendants except Defendant City of Hermosa Beach, as provided by law.

## FOURTH CLAIM FOR RELIEF

**(Intentional Interference with Prospective Economic Advantage – Defendants Papa, Bakaly, Brunn, Hartley, and Hermosa Beach Chamber of Commerce)**

84.     Plaintiff realleges and incorporates by reference herein each and every allegation set forth in paragraphs 1 through 83.

85.     On or before March 3, 2015, Plaintiff had an economic relationship with the Beach Reporter that likely would have resulted in further economic benefit to Plaintiff; namely, she was likely to receive more work from them.

86.     Because of her twenty year relationship with the Beach Reporter, and her casual acquaintance with Defendant Papa, Bakaly, and Hartley, and her membership in the Chamber, Defendants were aware of her relationship with the Beach Reporter.

87.     Defendants intended to harm Plaintiff, including by disrupting Plaintiff's relationship with the Beach Reporter, by discrediting her and making her politically "untouchable."  Defendants did wrongfully disrupt Plaintiff's relationship with the Beach Reporter by interfering with her rights, retaliating against her, and defaming her.

88.     Plaintiff was harmed by Defendants' conduct in that the Beach Reporter decided not to hire her for further work, on information and belief, solely or substantially because of Defendants' conduct with respect to the events of March 3, 2015.

89.     At all relevant times, each Defendant was the agent or employee of the remaining Defendants, and in doing the acts alleged, each of the Defendants were acting

within the course and scope of their agency or employment, or other authorized relationship with the other Defendants and with the permission and ratification and active support and conspiracy of the other Defendants.

90.     Defendants' unlawful actions were done willfully, maliciously, and with the specific intent to deprive Plaintiff of her common law rights to be free of intentional, wrongful interference with her prospective economic advantage.  They were also done with malice, fraud, and oppression, entitling Plaintiff to punitive damages against all Defendants except Defendant City of Hermosa Beach, as provided by law.

## FIFTH CLAIM FOR RELIEF

**(Negligent Interference with Prospective Economic Advantage – Defendants Papa, Bakaly, Brunn, Hartley, and Hermosa Beach Chamber of Commerce)**

91.     Plaintiff realleges and incorporates by reference herein each and every allegation set forth in paragraphs 1 through 90.

92.     On or before March 3, 2015, Plaintiff had an economic relationship with the Beach Reporter that likely would have resulted in further economic benefit to Plaintiff; namely, she was likely to receive more work from them.

93.     Because of her twenty year relationship with the Beach Reporter, and her casual acquaintance with Defendant Papa, Bakaly, and Hartley, and her membership in the Chamber, Defendants knew or should have known of her relationship with the Beach Reporter.

24

94.     Defendants knew or should have known that Plaintiff's relationship with the Beach Reporter would be damaged if they failed to act with reasonable care with respect to Plaintiff.

95.     Defendants failed to act with reasonable care with respect to Plaintiff.

96.     Defendants acted wrongfully by interfering with Plaintiff's rights, retaliating against her, and defaming her.

97.     Plaintiff's relationship with the Beach Reporter was disrupted, as she has not been hired again by the Beach Reporter in over seven months as of the filing of this Complaint.

98.     Plaintiff was harmed by Defendants' conduct in that the Beach Reporter decided not to hire her for further work, on information and belief, solely or substantially because of Defendants' conduct with respect to the events of March 3, 2015.

99.     At all relevant times, each Defendant was the agent or employee of the remaining Defendants, and in doing the acts alleged, each of the Defendants were acting within the course and scope of their agency or employment, or other authorized relationship with the other Defendants and with the permission and ratification and active support and conspiracy of the other Defendants.

## SIXTH CLAIM FOR RELIEF

### (Unfair Business Practices – Defendants Hartley and Hermosa Beach Chamber of Commerce)

100.    Plaintiff realleges and incorporates by reference herein each and every allegation set forth in paragraphs 1 through 99.

101.    The Hermosa Beach Chamber of Commerce is a business; it is a California corporation which charges businesses between $200.00 and $300.00 to join; it provides advertisement opportunities through its business directory, visible on its website; it has a full-time salaried staff; and hosts and supports various events promoting its member businesses.

102.    Membership in the Chamber provides economic benefits to local businesses in the form of increased visibility and legitimacy and opportunities for promotion and community involvement.  Plaintiff joined the Chamber and successfully sought election to the Board in order to enjoy these benefits.

103.    The Chamber engaged in unfair and unlawful business practices when it removed Plaintiff from its Board of Directors as punishment for her political expression. Plaintiff's removal caused her to lose the benefits of her membership, for which she had paid and worked for, and damaged her reputation among other members of the Chamber, who might otherwise have been interested in hiring Plaintiff for photography work.

104.    On information and belief, the Chamber's actions were calculated to punish opponents of the police department and/or Measure O, which was not only a political controversy but also an economic controversy, and ensure that opponents of the police department and/or Measure O would not be permitted to govern the Chamber as directors of the Board.  These actions unfairly and unlawfully gave business and economic advantages to Chamber members who did not express opposition to Measure O or the police department.

26

105.   Plaintiff is entitled to an injunction reinstating her as a Director of the Board of the Chamber of Commerce.

106.   Plaintiff is also entitled to reasonable restitution, in an amount to be proven at trial.

107.   At all relevant times, each Defendant was the agent or employee of the remaining Defendants, and in doing the acts alleged, each of the Defendants were acting within the course and scope of their agency or employment, or other authorized relationship with the other Defendants and with the permission and ratification and active support and conspiracy of the other Defendants.

108.   Defendants' unlawful actions were done willfully, maliciously, and with the specific intent to deprive Plaintiff of her statutory right to be free from unlawful, unfair, or fraudulent business practices.  They were also done with malice, fraud, and oppression, entitling Plaintiff to punitive damages against all Defendants except Defendant City of Hermosa Beach, as provided by law.

## SEVENTH CLAIM FOR RELIEF

### (Negligence – Defendants Brunn, Papa, Bakaly, Hartley, City of Hermosa Beach, and Hermosa Beach Chamber of Commerce)

109.   Plaintiff realleges and incorporates by reference herein each and every allegation set forth in paragraphs 1 through 108.

110.   Defendants' conduct described above was negligent in that Defendants took actions against Plaintiff that they knew or should have known were in violation of her rights and failed to exercise reasonable care in the circumstances.

27

111.    All Defendants had a duty to exercise reasonable care with respect to Plaintiff to ensure that Defendants did not cause unnecessary or unjustified harm to Plaintiff.  Defendants Brunn, Papa, Bakaly, and the City of Hermosa Beach had a heightened duty to avoid infringing on Plaintiff's rights, as they are public officials and a government entity, as well as a duty to hire, train, supervise, and discipline their officers and employees so as not to cause harm to Plaintiff and to prevent violations of Plaintiff's constitutional, statutory and common law rights.

112.    Plaintiff was deprived of her rights, causing harm to her in the form of emotional distress and the manifestation of physical symptoms, as well as economic loss and damage to her reputation.

113.    Defendants' negligence was a substantial factor in causing the harm to Plaintiff as described.

114.    At all relevant times, each Defendant was the agent or employee of the remaining Defendants, and in doing the acts alleged, each of the Defendants were acting within the course and scope of their agency or employment, or other authorized relationship with the other Defendants and with the permission and ratification and active support and conspiracy of the other Defendants.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment in favor of Plaintiff and against each Defendant on all counts, and for the following additional relief:

1.  Award actual damages and all other damages that may be allowed under state and federal law to Plaintiff in an amount to be determined at trial;

2. Award punitive damages in the amount of at least $75,000 against Defendant Brunn; at least $100,000 against Defendant Papa; at least $100,000 against Defendant Bakaly; at least $100,000 against Defendant Hartley; and at least $100,000 against Defendant Hermosa Beach Chamber of Commerce.

3. Award Plaintiff costs and reasonable attorneys' fees pursuant to 42 U.S.C. 1988 and California Civil Code § 52.1(h);

4. Award Plaintiff costs of suit;

5. Award Plaintiff pre- and post-judgment interest as permitted by law;

6. Award Plaintiff injunctive relief;

7. Award Plaintiff reasonable restitution;

8. Award such other and further relief as the Court may deem just and appropriate.

DATED: October 26, 2015

By:     /s Morgan Ricketts
        Morgan Ricketts
        Attorneys for Plaintiff Chris Miller

COMPLAINT

## VII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

DATED: October 26, 2015

By:    /s Morgan Ricketts
       Morgan Ricketts
       Attorneys for Plaintiff Chris Miller